J-A09002-19

2019 PA Super 181

| RICHARD SMITH, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW J. WELLS | : | No. 2254 EDA 2018 |

Appeal from the Judgment Entered, July 25, 2018,
in the Court of Common Pleas of Bucks County,
Civil Division at No(s): No. 2014-00874.

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

OPINION BY KUNSELMAN, J.:                    **FILED JUNE 07, 2019**

In this appeal of a negligence case, the defendant's version of events undoubtedly establishes his careless driving. A jury, however, found he acted within the standard of care. The trial court then refused to grant the plaintiff judgment as a matter of law.

This was error, which we now reverse. We also hold that a driver's failure to stop in the assured clear distance ahead is negligence *per se*, under the second clause of 75 Pa.C.S.A. § 3361. A new trial on causation and the measure of damages (if any) is in order.

Driving down the Pennsylvania Turnpike on the morning of April 24, 2012, Plaintiff Richard Smith saw traffic braking. He successfully stopped his Buick within the assured clear distance between himself and the car ahead. **See** N.T., 5/29/18, at 58. Defendant Andrew J. Wells, who was driving a Jeep Grand Cherokee behind Mr. Smith's Buick, did not.

_____
* Retired Senior Judge assigned to the Superior Court.

Mr. Wells testified, "I didn't stop quick enough . . . and rear-ended the car in front of me." N.T., 6/1/18, at 24. By his own admission, Mr. Wells did not see the Buick's brake lights illuminate. Instead, by the time he noticed Mr. Smith's stopped vehicle, those warning lights "were already on." N.T., 5/29/18, at 65. Mr. Wells could not recall where he was looking before seeing Smith's illuminated brake lights. *See Id.* at 64-65.

Mr. Wells jammed on his brakes in a last-ditch effort to avoid impact. He failed. Mr. Wells' Jeep hit the back of the Buick and propelled it into the next, stopped car. That car was also forced into the car ahead of it. Mr. Wells' failure to observe the stopped traffic thus created a four car pile-up. *Id.* at 61.

Mr. Smith sued Mr. Wells for a host of physical injuries he claims resulted from the accident. In his opening statement to the jury, defense counsel said the collision was Mr. Wells' "fault . . . no question about it." *Id.* at 54.

The entire trial and defense counsel's closing argument focused on whether the wreck actually injured Mr. Smith. *See*, e.g., N.T., 6/1/18, at 88-100. The defense's theory was that Mr. Smith, who had been in three prior automobile accidents, already suffered from the aliments he sought to attribute to Mr. Wells. At no point did Mr. Wells ask the jury to find that he had driven carefully.

Mr. Smith moved for a directed verdict that Mr. Wells negligently drove his vehicle and so breached the standard of care as a matter of law. The trial court denied that motion and authored a verdict slip asking the jury:

Do you find that Defendant Adam Wells was negligent?

Yes _____                    No _____

If you answer Question #1 "YES", proceed to Question #2.
If you answer Question #1 "NO", proceed to Question #3.[1]

Verdict Slip at 1.  The jury answered that question in the negative.

Mr. Smith moved for judgment notwithstanding the verdict (JNOV) on the question of negligence, which the trial court denied.  He also filed a post-trial motion seeking the same result.  The trial court also denied it.

This timely appeal followed.  Mr. Smith asks this Court to decide whether "the evidence . . . established negligence [by Mr. Wells,] warranting a directed verdict or judgment notwithstanding the verdict."  Smith's Brief at 5.  In the alternative, he also requests a new trial on negligence.  *See id.*

When reviewing a trial court's denial of a directed verdict and JNOV we examine the trial record to decide "whether there was sufficient competent evidence to sustain the verdict."  ***Birth Center v. St. Paul Companies, Inc.***, 787 A.2d 376, 383 (Pa. 2001)).  We must view the evidence in the light most favorable to the verdict winner and give him the benefit of every reasonable inference that arises from the facts of record.  ***Id.***

_____

[1] We note the verdict slip's direction to proceed to Question #3 after a "NO" reply was unnecessary.  Question #3 tells the jury to "[s]tate the amount of money damages you award Plaintiff Richard Smith for past and future pain and suffering," which is pointless information if Mr. Wells was not negligent. Verdict Slip at 2.  The better direction would have been "If you answer Question #1 'NO', please sign the sheet and return to the courtroom."

Mr. Smith's motions for directed verdict and JNOV sought judgment as a matter of law, based upon the trial court's alleged misapplication of the law of torts and a Pennsylvania statute. Those issues "are pure questions of law. Thus, our standard of review is *de novo*, and our scope of review is plenary." **Reott v. Asia Trend, Inc.**, 55 A.3d 1088, 1093 (Pa. 2012).

The trial court should grant a directed verdict or JNOV to a moving party when:

> one, the movant is entitled to judgment as a matter of law, or, two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor, whereas, with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

**Moure v. Raeuchle**, 604 A.2d 1003, 1007 (Pa. 1992) (citations omitted).

Here, a verdict against Mr. Wells on whether he drove negligently in the moments before he rear-ended Mr. Smith was beyond peradventure. Our review of the record reveals no facts favorable to Mr. Wells on the issue of his negligence, nor does he identify any in his brief.

Instead, Mr. Wells argues (as he did at trial) that the car wreck did not cause Mr. Smith any harm. **See**, e.g., Wells' Brief at 4. He claims "his testimony that he was able to slow his vehicle before impact and the photographs admitted as evidence at trial and showing extremely minimal damage speak for themselves and clearly spoke to the jury." **Id.** at 6-7. The

pictures may be worth a thousand words, but they say nothing about how safely Mr. Wells drove his car that day. They, like Mr. Wells' testimony, speak to whether his negligence was a legal cause of the harm for which Mr. Smith sued.

A plaintiff must prove four things in a negligence action: (1) a duty to act or not act within "a reasonable standard of conduct for the protection of others against unreasonable risks"; (2) breach of that duty; (3) a "close, causal connection between the conduct and the resulting injury"; and (4) harm to the plaintiff. W. Prosser, LAW OF TORTS § 30 at 143 (4th ed. 1971).

The first and second elements "make up what the courts usually have called negligence; but the term quite frequently is applied to the second alone." *Id.* When the trial court explained negligence to the jury, it defined the term based solely upon the second element. The court said, "A person who does something a reasonably careful person would not do under the circumstances is negligent." N.T., 6/1/18, at 77. Thus, by returning a verdict of no negligence, the jury exculpated Mr. Wells on the second element and found that he had conformed his conduct to the standard of reasonable care.

Mr. Wells relies heavily upon **Cirquitella v. C. C. Callaghan, Inc.**, 200 A. 588 (Pa. 1938) in his brief, as did the trial court in denying Mr. Smith's motion for JNOV. However, neither the trial court nor Mr. Wells attempt to reconcile their positions with **Cianci v. Burwell**, 445 A.2d 809, 810 (Pa. Super. 1982) or distinguish it. Even though Mr. Smith cited **Cianci** on appeal, Mr. Wells does not even address that case in reply. **See** Wells' Brief at ii. In

that case, we held that when, as here, there was no contributory negligence on the part of a rear-ended plaintiff, "[i]t is difficult to comprehend . . . how a jury could have returned a verdict for the defendant-appellee. Such a verdict is truly shocking to one's sense of justice . . . ." *Cianci* at 809.

We also find that *Cirquitella* is distinguishable. There, the defendant was following 20 feet behind a funeral procession at about eight to ten miles per hour through city streets. "The day was cold, and snow and ice were upon the street." *Cirquitella*, 200 A. at 589.

Here, the accident occurred on an Interstate Highway – a type of road unknown to the *Cirquitella* Court in 1938 – and there was no evidence of inclement weather. Thus, we conclude that, at best, *Cirquitella* is a creature of its time, confined to its unique, factual setting. *See Commonwealth v. Resto*, 179 A.3d 18, 22 (Pa. 2018) (stating that "the holding of a judicial decision is to be read against its facts"). *Cirquitella* offers little insight into how drivers should conduct themselves, during rush hour, on the Turnpike, in the 21st century.

In 1976, the legislature passed the Vehicle Code. See 75 Pa.C.S.A. §§ 101 – 9805. This Title established a statutory regime to regulate safe driving on today's highways. As such, the entire concept of negligence *per se* under the Vehicle Code did not exist in 1938 when the Supreme Court of Pennsylvania decided *Cirquitella*. Thus, the trial court's and Mr. Well's reliance upon the *Cirquitella* decision is misplaced.

This Court has made clear, despite the *Cirquitella* holding that:

- 6 -

the mere happening of a rear-end collision does not [at common law] constitute negligence as a matter of law on the part of the [driver] in the rear . . . the manner in which an accident occurs is a circumstance to be considered in determining the issue of negligence. Where, as here, a vehicle has been struck in the rear while slowing for a traffic signal, there is an inference to be drawn that the driver of the offending vehicle either was not sufficiently vigilant or failed to have his vehicle under such control that he could bring it to a stop within the assured clear distance ahead.

*Cianci*, 445 A.2d at 810.

The *Cianci* Court further explained that a driver who rear-ends a car may inculpate himself by his own words. There, the defendant testified:

Well, as [plaintiff] was approaching an intersection, I believe he could have made the green light. But he stopped suddenly, and that is what made me run into the back of his car.

*Id.* We vacated the defense verdict and remanded for a new trial.

Similarly, Mr. Wells testified, "I didn't stop quick enough, I guess, and rear-ended the car in front of me." N.T., 6/1/18, at 24. But Mr. Wells' additional admissions make his negligence even clearer than the negligence we held could be inferred in *Cianci*. Unlike *Cianci*, where the defendant at least had the potential defense that the plaintiff's car should not have stopped at the traffic light, there was absolutely no reason for Mr. Wells to collide with Mr. Smith, except for Mr. Wells' unreasonably fast driving in rush-hour traffic. Mr. Wells conceded at his deposition – which plaintiff's counsel read to the jury – that, when he first noticed Mr. Smith's car in front of him, its brake lights "were already on," and it was stopped. N.T., 5/29/18, at 65.

If he had been acting as a reasonable person, Mr. Wells would have had sufficient time to brake safely within the assured clear distance ahead, just as Mr. Smith had done, and just as the driver in front of Mr. Smith had done, and the driver in front of that driver had done, and so on, and so on up the Turnpike. Thus, as a matter of law, the only person on the Turnpike that day who did not live up to the standards of a reasonably prudent driver was Mr. Wells, because a reasonably prudent person "invariably looks where he is going, and is careful to examine the immediate foreground before he executes a leap or bound . . . ." A. P. Herbert, MISLEADING CASES IN THE COMMON LAW, 1930, at 12.

If everyone else driving on the highway left themselves enough distance and time to bring their vehicles safely to a halt, the only logical conclusion is that Mr. Wells did not, and he therefore acted unreasonably. Indeed, all the other drivers conformed their speed to the mandates of the General Assembly, which has legislated as follows:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, ***nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead***. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

72 Pa.C.S.A. § 3361 (emphasis added).

By its plan language, violation of this statute's second clause establishes Mr. Well's negligence *per se*. That clause prohibits anyone from driving at any "speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead." *Id.* Our legislature used the disjunctive conjunction "nor." Thus, the clause following "nor" operates independently of the first clause's focus upon a "reasonable and prudent" driving speed "under the conditions . . . and potential hazards" of a roadway. *Id.*

The trial court erroneously confined its analysis of the statute to the first clause. It focused exclusively upon whether a jury should determine that Mr. Wells' driving was "reasonable and prudent under the conditions' as required under 75 Pa.C.S.A. § 3361 . . . ." Trial Court Opinion, 11/13/18, at 3. By limiting its reading of Section 3361 to only the first clause, the trial court overlooked the second clause entirely.

This myopic reading contravenes the Rules of Statutory Construction. Our "General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S.A. § 1922. By analyzing only the first clause of 72 Pa.C.S.A. § 3361 the trial court rendered its second, more-exacting clause superfluous.

Additionally:

> parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things.

> (b) Statutes *in pari materia* shall be construed together, if possible, as one statute.

- 9 -

1 Pa.C.S.A. § 1932. Because 72 Pa.C.S.A. § 3361 deals with the same class of persons – drivers on the Commonwealth's roads – it must be interpreted *in pari materia* with itself.

Section 3361 is a unified statute on safe-driving speeds and distances, and we must give all of its clauses force and effect. Interpreting the statute in this light, we hold that it prohibits two, distinct forms of illegal driving. The first is driving at any speed that is unreasonable and imprudent for the conditions and hazards of the road. The second is driving at any speed that prevents a driver from fully braking before striking a car, pedestrian, or other object ahead. The latter violation, if committed, gives rise to negligence *per se* on the part of the driver striking the car, pedestrian, or other object ahead, because the legislature intended to protect all of them when it enacted Section 3361.

Here, Mr. Wells drove at a speed that made it impossible for him to stop his vehicle within the assured clear distance ahead, because that distance ahead ended where Mr. Smith's bumper began. The trial court erred in its statutory construction when it did not find Mr. Wells' violation of second clause of Section 3361 to be negligence *per se*.

Mr. Wells disobeyed that clause and thereby breached the duty of care the General Assembly has prescribed. He claimed no sudden emergency or any other affirmative defense (such as brake-failure, ice on the highway, or

Mr. Smith's contributory negligence) to excuse this rear-end collision.[2]  Thus, the only reason for this accident was Mr. Wells' obvious failure to conform his conduct to the dictates of 72 Pa.C.S.A. § 3361.  The trial court's inability to recognize that simple truth and its refusal to award Mr. Smith judgment as a matter of law was error.

Mr. Smith's first appellate issue is meritorious, and it affords him full relief.

Judgment vacated.  Order denying JNOV reversed.

Case remanded for a new trial on causation and damages.

Jurisdiction relinquished.

Judge Pellegrini joins this Memorandum.

Judge Murray concurs in the result.

---

[2] As with any claim of negligence *per se*, the driver of the succeeding vehicle may defend by pleading and proving an involuntary violation of the statute at issue.  When negligence *per se* is imposed, the "standard of conduct is taken over by the court from that fixed by the legislature, and jurors have no dispensing power by which to relax it, **except in so far as the court may recognize the possibility of a valid excuse for disobedience of the law**." **Bumbarger v. Kaminsky**, 457 A.2d 552, 555 (Pa. Super. 1983) (quoting W. Prosser, LAW OF TORTS § 36 at 200 (4th ed. 1971) (emphasis in original)).  In **Bumbarger**, for example, the defendant ran a stop sign and collided with a car in the intersection.  He claimed an involuntary violation of the law, because ice on a steep hill made it impossible for him to obey the stop sign at the bottom.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/7/19</u>