J-S11026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARK MCCULLOUGH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RJ DEVELOPMENT COMPANY T/D/B/A | : | No. 986 WDA 2019 |
| RJ COMMUNITY MANAGEMENT CO. | : | |

Appeal from the Judgment Entered July 22, 2019
In the Court of Common Pleas of Butler County Civil Division at No(s):
10922 OF 2015

BEFORE:  NICHOLS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 3, 2020**

Mark McCullough (Appellant) appeals from the judgment entered against him and in favor of RJ Development Company t/d/b/a RJ Community Management Co. (RJ), the property management company for the townhome patio community in which Appellant resides, the Mansions of North Park (Mansions).[1]  We affirm.

Appellant's action arises out of his challenge to certain fines levied against him by the Mansions of North Park Homeowners Association (the HOA), for Appellant's actions that the HOA's Board of Directors (the Board)

_____

[1] The Mansions community, which is located in Gibsonia, Allegheny County, was created by the recording of a Declaration of Covenants, Conditions and Restrictions in 1988.  The Mansions is subject to the provisions of the Uniform Planned Community Act (UPCA), 68 Pa.C.S.A. § 5101 *et seq*.

deemed to be in violation of the Amended Bylaws, Conditions and Restrictions of the HOA (the Bylaws).[2] The Bylaws authorize the Board to, *inter alia*, (1) enforce the conditions and restrictions set forth in the Bylaws, acting on behalf of the HOA; (2) assess fines to Mansions' unit owners who violate the Bylaws; and (3) contract with a property management entity to assist the Board with managing the affairs of the HOA. Acting in its contractual role, RJ, upon direction by the Board, sent Appellant notices pertaining to Appellant's violations. RJ notified Appellant that the HOA was requesting that he remedy the violations to avoid the imposition of fines pursuant to the Bylaws; however, Appellant did not do so. Thereafter, RJ notified Appellant that certain fines had been assessed against him for the violations.[3] Appellant undisputedly did not appeal these fines to the Board.

Appellant subsequently initiated this action against RJ in magisterial

_____

[2] Specifically, the Board, which is comprised of other owners of townhome units in the Mansions, determined that Appellant was in violation of the Bylaws for (1) installing netting in his yard to prevent deer from accessing it; (2) placing rocks in his yard; and (3) placing mothballs in his yard, purportedly to prevent neighborhood dogs from urinating on his lawn; we collectively refer to these actions as "Appellant's violations."

[3] Appellant asserts that the fines, which continue to accrue, are currently over $5,000, but may be in excess of $25,000. Brief for Appellant at 8.

district court,[4] which dismissed the complaint without prejudice. Appellant then filed a *de novo* appeal in the trial court. He claimed that RJ targeted him for disparate treatment, and improperly assessed fines against him in retaliation for the previous litigation that Appellant brought against the HOA. Appellant sought:

I. A declaratory judgment to set aside the unreasonable fines imposed against Appellant;

II. An award for his attorneys' fees and costs, pursuant to 42 Pa.C.S.A. § 2503(6), (7) and (9);[5]

III. Punitive damages and/or supplemental relief.

---

[4] Notably, Appellant did not name the HOA as a codefendant in this action. However, the HOA and Appellant previously engaged in substantial, contentious litigation concerning their ongoing disputes. ***See generally McCullough v. Mansions of N. Park Homeowners Ass'n***, 1833 WDA 2011 (Pa. Super. Jan. 25, 2013) (unpublished memorandum).

[5] Section 2503(6), (7) and (9) authorizes the imposition of reasonable attorneys' fees, upon the discretion of the trial court, as a sanction for dilatory, obdurate or vexatious conduct during the pendency of a case, or where the party who commenced the case acted in bad faith or an arbitrary or vexatious manner. ***See In re Estate of Mumma***, 125 A.3d 1205, 1219 (Pa. Super. 2015). In this appeal, Appellant argues that RJ's actions were in direct contravention of a decision of the Court of Common Pleas of Allegheny County, in a prior action that the HOA previously initiated against Appellant; namely, ***Mansions of N. Park Homeowners Ass'n v. McCullough***, 1049 WDA 2010 (Pa. Super. Mar. 16, 2010) (unpublished memorandum quashing appeal) (***McCullough I***). Appellant points out that the trial court in ***McCullough I*** commented that "we are at the point where [Appellant's] attorney fees begin to appear awardable under 42 Pa.C.S.[A.] § 2503(6), (7) and (9)." ***McCullough***, at * 9; ***see also*** Brief for Appellant at 17. We reference this comment as "the ***McCullough I*** fees comment."

J-S11026-20

Prior to trial, RJ filed several motions *in limine* (collectively referred to as "RJ's motions *in limine*"), seeking to preclude evidence and argument pertaining to:

(1) previous litigation between Appellant and the HOA;

(2) allegations that RJ is legally responsible for any claimed breaches of the Bylaws by RJ;

(3) Appellant's claims for sanctions and supplemental relief; and

(4) allegations that RJ owed Appellant a duty or had the authority to impose the fines against him.

The trial court granted RJ's motions *in limine*, after which the matter proceeded to a jury trial on April 22, 2019. Following the close of evidence, RJ moved for a directed verdict in its favor, which the trial court granted.

Appellant timely filed a post-trial motion, arguing that the trial court erred in granting RJ's motions *in limine* and entering a directed verdict. By order entered June 5, 2019, the trial court denied Appellant's motion. Appellant timely filed a notice of appeal.[6] The trial court ordered him to file a

---

[6] Appellant's notice of appeal challenged the trial court's June 5, 2019 order. An appeal properly lies from the entry of judgment, not from an order denying post-trial motions. **See Johnston the Florist, Inc. v. TEDCO Constr. Corp.**, 657 A.2d 511, 516 (Pa. Super. 1995) (*en banc*). Here, this Court entered an order directing Appellant to praecipe the trial court Prothonotary to enter judgment, and Appellant complied. Judgment was entered on July 22, 2019. Thus, Appellant's notice of appeal relates forward to the date judgment was entered, and there are no procedural/jurisdictional impediments to our review. **See Hart v. Arnold**, 884 A.2d 316, 325 n.2 (Pa. Super. 2005) (stating "[a] final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction."). We have corrected the caption accordingly.

- 4 -

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied. The court then issued a comprehensive Rule 1925(a) opinion.

Appellant presents three issues for our review:

1. Did the trial court err or commit an abuse of discretion when it precluded the introduction of prior litigation?

2. Did the trial court err or abuse its discretion when it precluded evidence that RJ [] acted on its own in breach of contract; that the HOA was not an indispensable party?

3. Did the trial court err when it granted a verdict precluding the evidence of testimony regarding attorney's fees and costs and punitive damages?

Brief for Appellant at 6 (answers to questions omitted). We address Appellant's issues together, as they are related.

> When reviewing a trial court's [grant] of a directed verdict[,] … we examine the trial record to decide whether there was sufficient competent evidence to sustain the verdict. We must view the evidence in the light most favorable to the verdict winner and give him the benefit of every reasonable inference that arises from the facts of record.
>
> * * *
>
> The trial court should grant a directed verdict … to a moving party when: one, the movant is entitled to judgment as a matter of law, or, two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor, whereas, with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Smith v. Wells*, 212 A.3d 554, 556-57 (Pa. Super. 2019) (citations omitted).

"We will reverse a trial court's grant or denial of a directed verdict [] only when we find an abuse of discretion or an error of law that controlled the outcome of the case." *Hall v. Episcopal Long Term Care*, 54 A.3d 381, 395 (Pa. Super. 2012) (citation omitted). Additionally, we review orders granting motions *in limine* and precluding the admission of evidence for an abuse of discretion. *Odato v. Fullen*, 848 A.2d 964, 966 (Pa. Super. 2004).

Appellant argues that the trial court abused its discretion in granting RJ's motions *in limine*, and entering a directed verdict, because the issues were properly within the purview of the jury. *See* Brief for Appellant at 15-23. According to Appellant, contrary to the trial court's findings:

(1) RJ was in privity with the HOA, and "RJ [] has, by undertaking enforcement and collection [of fines], stepped into the shoes of the HOA. Every single notice or matter regarding enforcement came from RJ []." *Id.* at 18;

(2) It was not necessary that the HOA be joined as a party in the instant action, since "[Appellant] opposes the accrual of unreasonable fines imposed solely by RJ [], without the authority of the HOA[.]" *Id.* at 21.

Appellant alternatively contends that there was "evidence that would have shown that RJ [] was acting outside the scope of [its] contract [with] the HOA[,] and thus[, the] fines assessed by RJ [] could not, in good conscience, be collected from [Appellant]." *Id.* at 15. Concerning the motion *in limine* precluding evidence of the prior litigation, Appellant asserts:

(1) such evidence was highly probative here, emphasizing the *McCullough I* fees comment that Appellant may be entitled

- 6 -

to an award of attorneys' fees. *See id.* at 16-17; *see also id.* at 22-23;

(2) "RJ [] sought to undermine a legal right already established in favor of [Appellant, *i.e.*,], that [he] could not be subject to massive fines for small and short-lived transgressions of [the Bylaws]." *Id.* at 17-18.

Finally, Appellant asserts that the trial court erred in precluding evidence that would support an award of punitive damages against RJ, in light of RJ's evidenced purpose to harass Appellant and prevent him from seeking election to the Board. *Id.* at 15; *see also id.* (asserting that an owner of a unit in Mansions with an unpaid fine cannot serve on the Board).

In the trial court's thorough and well-reasoned opinion, which we adopt and incorporate as our own, the trial court addressed all of Appellant's claims, set forth the applicable law, and explained that it properly granted RJ's motions *in limine* and entered a direct verdict against Appellant. *See* Trial Court Opinion, 8/28/19, at 4-19.[7] In sum, the court determined:

- The HOA, which held a perfected lien on Appellant's Mansions unit for the fines imposed, is an indispensable party to this action. Appellant's failure to join the HOA in the action constitutes an improper attempt to extinguish the lien without the lienholder's presence. *See id.* at 5-9;

- Alternatively, even if, *arguendo*, the HOA did not hold a lien, Appellant was personally liable to the HOA for the fines; RJ was merely a conduit for the collection of said fines. *See id.* at 9;

- There was no legitimate question of fact as to whether (1) RJ had the authority to assess fines without the direction of the

_____

[7] When relevant, the parties shall attach a copy of the August 28, 2019 opinion to future pleadings.

HOA or selectively enforced the Bylaws against Appellant, ***see id.*** at 10-11; or (2) RJ had acted unilaterally or outside of the scope of its management contract with the HOA. ***See id.*** at 10;

- The trial court did not abuse its discretion in granting RJ's motions *in limine*, since evidence or argument relating to Appellant's claims of (1) prior litigation between Appellant and the HOA was improper and irrelevant in the instant case, as RJ was not a party to the prior litigation, ***see id.*** at 12-13; (2) an award of punitive damages and attorneys' fees was improper where Appellant failed to present any evidence that would raise a question of fact on these matters, and, in any event, Appellant's claims for such relief pertained to conduct of the HOA, not RJ, ***see id.*** at 13-17; and (3) RJ's purportedly having acted outside of the scope of its management contract with the HOA is belied by the record; RJ acted at the direction of the Board. ***See id.*** at 17-19.

Our review discloses that the trial court's determinations are amply supported by both the record and the law; moreover, the Honorable S. Michael Yeager, sitting as the trial court, has authored a comprehensive opinion, such that further commentary by this Court would be redundant. We discern no error or abuse of the court's discretion in granting RJ's motions *in limine* and entering a directed verdict against Appellant. Thus, we affirm the judgment.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2020

- 8 -

## IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

| | |
|---|---|
| MARK MCCULLOUGH, | CIVIL DIVISION |
| | A.D. No. 15-10922 |
| Plaintiff, | |
| vs. | SUPERIOR COURT DOCKET |
| | 986 WDA 2019 |
| RJ DEVELOPMENT COMPANY t/d/b/a | |
| RJ COMMUNITY MANAGEMENT CO., | |
| | |
| Defendant. | |

Attorney for Plaintiff: Sean M. Gallagher, Esquire
Attorney for Defendant: Stephen L. Guzzetti, Esquire

Yeager, J.                                                                    August 27, 2019

### RULE 1925(a) OPINION

The Plaintiff/Appellant, Mark McCullough (hereinafter, "Plaintiff"), appeals from this

Court's denial of his *Motion for Post-Trial Relief*, wherein the Plaintiff argued that this Court

erred and/or abused its discretion by granting certain of the Defendant's, RJ Development

Company t/d/b/a RJ Community Management Co. (hereinafter, "Defendant"), *Motions in*

*Limine*, and by denying the Plaintiff's request for a new trial following the Court's entry of a

Directed Verdict for the Defendant, RJ Development Company t/d/b/a RJ Community

Management Co., on or about April 22, 2019.

### I.     Background and Procedural History

The undisputed background facts and relevant procedural history of this case are as

follows. The Plaintiff owns and resides at 10075 Mansion Drive, Gibsonia, Pennsylvania

15044, a unit within a townhome patio community named the Mansions of North Park. The

Mansions of North Park community was created upon the recording of the Mansions of North

Park Declaration of Covenants, Conditions and Restrictions (hereinafter, at times, "Declaration") on or about March 24, 1988, and is subject to the Uniform Planned Community Act, 68 Pa.C.S.A. § 5101 *et seq*. The Mansions of North Park has a Unit Owners Association named the Mansions of North Park Homeowners' Association, Inc. (hereinafter, at times, the "HOA"). On September 12, 2007, the HOA filed Amended By-laws, Conditions and Restrictions, and, on July 25, 2012, adopted the First Amendment of the Amended By-laws, Conditions and Restrictions of Mansions of North Park Planned Residential Development (hereinafter, collectively, the "Bylaws") (the Declaration and Bylaws will be referred to collectively hereinafter as the "governing documents") . The Bylaws provided, *inter alia*, for certain fines to be assessed against members for violations of the above-referenced governing documents.

The Defendant is the management company for the Mansions of North Park Homeowners' Association. Pursuant to its role as the management company for the HOA, the Defendant sent certain notices of rule violations to the Plaintiff regarding items placed outside his Unit. Thereafter, the Defendant notified the Plaintiff that certain fines had been assessed against the Plaintiff for said violations and the Plaintiff's failure to remedy same.

The Plaintiff subsequently filed suit against the Defendant in Magisterial District Court 50-3-04. District Judge David T. Kovach dismissed the Complaint without prejudice and the Plaintiff appealed *pro se*. Following the Plaintiff's engagement of counsel, on or about May 16, 2016, the Plaintiff filed his *First Amended Action for Declaratory Judgment*, alleging that the Defendant targeted the Plaintiff for disparate treatment, and assessed fines against the Plaintiff, in retaliation and retribution for the Plaintiff's previous litigations with the Mansions of North Park Homeowners' Association, Inc.

2

In Count I of his *First Amended Action for Declaratory Judgment*, the Plaintiff sought a Declaratory Judgment to set aside the fines the Defendant allegedly imposed against the Plaintiff. In Count II, the Plaintiff sought Attorney's Fees and Costs pursuant to 42 Pa.C.S.A. § 2503(6), (7), and (9), alleging that the Defendant's actions were in direct contravention of an opinion written by Judge Friedman of the Court of Common Pleas of Allegheny County, Pennsylvania, in a prior action between the Plaintiff and the Mansions of North Park Homeowners' Association, to wit, *Mansions of North Park Homeowners' Association v. McCullough*, 2009 Pa. D&C LEXIS 112, *aff'd. w/o opinion* 996 A.2d 566 (Pa. Super. 2010). Finally, in Count III, the Plaintiff sought Punitive Damages relative to the assessment of the fines and the alleged oppression of the Plaintiff in contradiction to the said prior Court decision by Judge Friedman.

On or about July 20, 2016, the Defendant filed its *Answer and New Matter to Plaintiff's First Amended Complaint*. On or about August 1, 2016, the Plaintiff filed his *Reply to New Matter*. Thereafter, on or about June 12, 2017, with leave of Court, the Defendant filed its *First Amended New Matter to Plaintiff's First Amended Action for Declaratory Judgment*, and, on or about December 14, 2017, the Plaintiff filed his *Reply to First Amended New Matter*.

On April 22, 2019, the Court heard argument on five (5) Motions in Limine filed by the Defendant, and the Plaintiff's Responses thereto. Four (4) of said Motions were granted, i.e., Defendant's *Motion in Limine to Preclude Evidence or Argument Relating to Prior Litigation and Fines not Subject to This Case*; *Motion in Limine to Preclude Argument that Defendant is Legally Responsible for any Breach of Violation of the Mansions of North Park HOA's Declaration and Bylaws*; *Motion in Limine to Preclude Evidence of Argument*

3

*Relating to Plaintiff's Claims for Sanctions and Supplemental Relief*; and *Motion in Limine to Preclude Argument that Defendant Owed Him a Duty or Had Authority or Discretion to Impose Fines on Plaintiff.* A jury trial in this matter commenced immediately thereafter. At the conclusion of the Defendant's case in chief, the Court entered a Directed Verdict for the Defendant.

On or about May 1, 2019, the Plaintiff filed his *Motion for Post-Trial Relief*, arguing the Court improperly granted three of the aforementioned *Motions in Limine*, i.e., those Motions in Limine excluding 1) evidence of prior litigation and conduct, 2) evidence regarding attorneys' fees and sanctions, and 3) evidence of breach of contract. The Plaintiff further argued this Court erred by improperly granting a Directed Verdict for the Defendant. On or about June 5, 2019, this Court denied the Plaintiff's *Motion for Post-Trial Relief.* Subsequently, on or about July 2, 2019, Plaintiff filed his Notice of Appeal to Superior Court, and on July 22, 2019, filed and served his *Statement of Matters Complained of on Appeal.*

In his *Statement of Matters Complained of on Appeal*, the Plaintiff alleges the Court erred by:

1. Granting the Defendant's Motion for a Directed Verdict;

2. Refusing to grant a new trial as a result of its error in entering a Direct Verdict, and,

3. Granting the Defendant's Motions in Limine excluding evidence as to 1) prior litigation and conduct, 2) attorneys' fees and sanctions, and 3) breach of contract of the Declaration and Covenants.

## II.    Discussion

The Plaintiff/Appellant's first two allegations of error argue that this Court improperly granted a Directed Verdict for the Defendant, and further improperly denied the Plaintiff's post-trial motion for a new trial based upon the erroneously granted Directed Verdict.

4

Following the conclusion of the Defendant's case-in-chief during the trial of this matter, the Defendant motioned for the entry of a Directed Verdict against the Plaintiff, arguing that the Plaintiff offered no evidence to create a question of fact that the Defendant had the power or authority to set aside the fines in this case, or that the Defendant acted outside the scope of its contract with the HOA. The Defendant further argued that the Mansions of North Park Homeowners' Association was an indispensable party to this litigation, and that the case must be dismissed based upon the absence of the HOA. The Plaintiff counter-argued that there existed a question of fact for the jury as to whether the Defendant acted outside the scope of its management contract with the HOA, whether it properly assessed fines against the Plaintiff, and whether the HOA was an indispensable party to this action.

When deciding whether to grant a motion for a directed verdict,

> the trial court must consider the facts in the light most favorable to the non-moving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony. *Cooke v. Travelers Ins. Co.*, 350 Pa.Super. 467, 504 A.2d 935 (1986). A directed verdict can only be granted where the facts are clear and there is no room for doubt.

Boyce v. Smith-Edwards-Dunlap Co. 580 A.2d 1382, 1386 (Pa. Super. 1990).

The Court granted the Defendant's Motion for a Directed Verdict for two reasons. First, it determined that the Mansions of North Park Homeowners' Association was an indispensable party to the case. Second, the Court determined that there was no evidence presented that created a question of fact as to whether the Defendant had the discretion or ability to assess the fines against the Plaintiff without the directive of the HOA, or as to whether the Defendant acted outside the scope of its management contract with the HOA.

As regards the matter of the failure to join an indispensable party, case law provides the following:

5

It is fundamental that a court in equity cannot grant relief without the joinder of all indispensable parties. A party is indispensable when his rights are so connected with the claims of the litigants that no decree can be fashioned between them without impairing those rights.

In *Mechanicsburg Area School District v. Kline,* 494 Pa. 476, 431 A.2d 953 (1981), our Supreme Court articulated some of the questions to be considered in the determination of indispensable parties:

1. Do absent parties have a right or interest related to the claim?
2. If so, what is the nature of that right or interest?
3. Is that right or interest essential to the merits of the issue?
4. Can justice be afforded without violating the due process rights of absent parties?

Posel v. Redevelopment Auth. of City of Philadelphia, 456 A.2d 243, 245–46 (Pa. Cmwlth. 1983) (internal citations omitted).

Presently, the relief sought by the Plaintiff was the setting aside of the currently due and owing homeowners' association fines assessed against him. As regards the first two prongs of the indispensable party test, as noted by the Superior Court in Forest Highlands Community Association v. Hammer, a homeowners' association has a lien on any unit for fines imposed against the unit owner:

[A]s an Association, Appellant has within its arsenal of powers: 1) the ability to collect assessments for common expenses from unit owners; 2) to institute litigation in its own name on matters affecting the planned community; 3) to impose and receive payments, fees or charges for the use of the common elements[2] of the Association; 4) to impose charges for late payment of assessments and, after notice and an opportunity to be heard, levy reasonable fees for violations of the Association; 5) to charge a capital improvement fee, annually, for the general common expense to each unit owner; and 6) to exercise all other powers that may be implemented in this Commonwealth by legal entities like the Association. 68 Pa.C.S.A. § 5302(a)(2), (4)(10), (11), (12)(i) and (15). In effectuating these ends, the Uniform Planned Community Act ("UPCA") provides for an assessment lien, which Appellant claims is due from Appellee; to-wit:

§ 5315. Lien for assessments

6

(a) General rule.—The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. 68 Pa.C.S.A. § 5315(a).

Consistent with Section 5315(a), **Appellant had a lien on Appellee's unit as of the day the money became due. As a corollary thereto, the UPCA provides that an association's lien is perfected simply by recording its declaration, which also perfects the lien.** 68 Pa.C.S.A. § 5315(d). Appellant's "Declaration" was recorded with the Recorder of Deeds of Allegheny County at Deed Book Volume 7362, Page 608, and the recordation is disputed by no one. *See Hammer I,* 879 A.2d at 225. Consequently, the Association's lien against Appellee was perfected long before it put in motion a judicial sale of Appellee's unit *via* the sheriff's office of Allegheny County.

Forest Highlands Cmty. Ass'n v. Hammer, 903 A.2d 1236, 1238–39 (Pa. Super. Ct. 2006) (emphasis added). A full reading of section 5315(a) provides the following:

(a) **General rule.**--The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in a like manner as a mortgage on real estate. A judicial or other sale of the unit in execution of a common element lien or any other lien shall not affect the lien of a mortgage on the unit, except the mortgage for which the sale is being held, if the mortgage is prior to all other liens upon the same property except those liens identified in 42 Pa.C.S. § 8152(a) (relating to judicial sale as affecting lien of mortgage) and liens for planned community assessments created under this section. **Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged under section 5302(a)(10), (11) and (12) (relating to power of unit owners' association) and reasonable costs and expenses of the association, including legal fees, incurred in connection with collection of any sums due to the association by the unit owner or enforcement of the provisions of the declaration, bylaws, rules or regulations against the unit owner are enforceable as assessments under this section.** If an assessment is payable in installments and one or more installments are not paid when due, the entire outstanding balance of the assessment becomes effective as a lien from the due date of the delinquent installment.

68 Pa.C.S.A. § 5315(a) (emphasis added).

The Mansions of North Park Declaration of Covenants, Conditions and Restrictions

was recorded with the Recorder of Deeds Office of Allegheny County, Pennsylvania, on or

7

about March 24, 1988, at Deed Book Volume 7750, Page 17, which no party disputes. (Pl's Ex. J; Def's First Am. New Matter at ¶3; Pl's Reply to Def's First Am. New Matter at ¶3).

The Declaration provides, in pertinent part, that:

> Each owner of any Lot by acceptance of a deed therefor…agree[s] to pay to the Association…**such other assessments as may promote the recreation, health, safety, and welfare of the residents of the Properties….The assessments, together with interest, costs, and reasonable attorney's fees, shall be a charge on the land and shall be a continuing Lien upon the Lot against which each such assessment is made. Each such assessment, together with interest, costs, and reasonable attorney's fees, shall also be the personal obligation of the person who was the Owner of such Lot at the time when such assessment fell due.**

(Pl.'s Ex. J., Declaration, Article IV, Covenant for Assessments, Section 1. Creation of Lien and Personal Obligation of Assessment) (emphasis added). The Declaration further provides:

> Enforcement of these covenants and restrictions shall be by any proceeding at law or in equity against any person or persons violating or attempting to violate any covenant or restriction, either to restrain violation or to recover damages….The expense of enforcement by the Association shall be chargeable to the Lot Owner violating these covenants and restrictions, and shall constitute a lien on the Lot, collectible in the same manner as assessments hereunder.

(Pl.'s Ex. J., Declaration, Article X, General Provisions, Section 1. Enforcement). Finally, the Amended By-Laws, Conditions and Restrictions for Mansions of North Park Homeowners' Association provides that,

> A limited assessment is applicable to an Owner or Owners whose Units receive a benefit not received by all Owners. **The Board shall have the right to impose a Limited Assessment on an Owner or Owners whenever an Owner or Owners fails to maintain his/her or their Unit in accordance with general community standards as determined by the Board.**

(Pl's Ex. K, Amended By-Laws, Conditions and Restrictions for Mansions of North Park Homeowners' Association, Article V, Assessments, Section 6. Limited Assessment)

8

(emphasis added). Thus, the fines levied against the Plaintiff in this case constitute Assessments under the governing documents. The HOA therefore had a perfected lien on the Plaintiff's Unit for the amount of the fines as of the date the fines became due; by bringing this action against the management company only, the Plaintiff sought to extinguish a lien without the lienholder's presence. The lienholder's rights are essential to the merits of the issue, and justice cannot be afforded without violating the due process rights of the lienholder, in this case, the HOA. As such, the Court respectfully submits that the HOA was an indispensable party to the action seeking to extinguish its lien.

Additionally, assuming, *arguendo*, that the HOA did not possess a lien on the Plaintiff's Unit as of the date of the Directed Verdict, the governing documents also establish personal liability on a Unit owner for all fines and assessments levied against said owner. As such, the Plaintiff remained personally liable for any and all fines assessed against him, even if said fines did not constitute a lien on the Unit. The fines were due and owing to the HOA via the Defendant. The Defendant, however, had no claim to or interest in the fines themselves, but was merely a conduit for the collection of said fines. If the Plaintiff's request to set aside the fines was granted, the HOA, which is not a party to this action, would not only be deprived of any lien against the Plaintiff's unit, it would also be deprived of its right to collect said fines against the Plaintiff personally. As such, the HOA had a direct interest in the fines the Plaintiff sought to set aside, the disposition of the fines was essential to the merits of the case, and justice could not be afforded without violating the due process rights of the HOA, an absent party. Therefore, the Court again respectfully submits that the HOA was an indispensable party to this action.

9

Finally, the Court also granted the Directed Verdict on the basis that the Plaintiff presented no evidence at the time of trial that the Defendant, i.e., the management company for the HOA, had the power or authority to impose fines against the Plaintiff, or did so in this case at its own discretion, or selectively enforced the governing documents against the Plaintiff. All evidence presented at trial demonstrated that the Defendant was acting as an agent for a disclosed principal, i.e., the HOA's Board of Direcotrs, that the Defendant sent the Plaintiff notices of the violations and fines at issue in this case at the specific direction of the HOA's Board of Directors, and that the Defendant acted within the scope of its contract with the HOA's Board of Directors.

During trial, the Plaintiff admitted that any appeal of his fines would have been directed to the Board of Directors, and that the Board of Directors had the authority to determine whether or not the fines and violations should be dismissed. (N.T. 114:14-25). The Plaintiff did not offer any evidence that the Defendant acted on its own authority with regard to the notices of violation or the fines in this case. Additionally, Defendant's witness, Donna Herrle, testified that she is the current President of the Board of Directors for the HOA, and that she has been in this position for the past six and a half years. (N.T. 168:9-19). She further testified that the Board of Directors determined that the Plaintiff's conduct at issue constituted violations of the governing documents, and that the Board of Directors instructed the Defendant to issue each of the notices of violations to Mr. McCullough. (N.T. 170:14 – 171:17). A jury could not have determined that the Defendant acted with discretion in this case, except with improper speculation and conjecture.

The Plaintiff also failed to present any evidence that could have lead a reasonable jury to conclude that that the governing documents were selectively enforced against the Plaintiff.

10

The Plaintiff's only testimony regarding selective enforcement was that **he** was not aware of any other Unit owner being fined for dogs urinating on or defecating on his lawn, and that there was no mention of dog dropping or deer netting fines against other Unit owners in Plaintiff's Exhibit L, Mansions of North Park CCR Ride List, which is a fine list for the Mansions of North Park, dated July 30, 2013. (N.T., Aug. 22, 2019, 61:2 – 65:10; 67:14 – 69:3; 70:17-71). However, Plaintiff's Exhibits C and D, which document the E-mails between the Plaintiff and Defendant regarding the Plaintiff's complaints of the dog droppings and his deer netting fines, are dated 2014 and later. The parties refer numerous times to the Plaintiff's first E-mail regarding the dog droppings, dated October 11, 2014. Thus, the 2013 fine list bears no relevance to the issues of which the Plaintiff complained, i.e., selective enforcement of the governing documents against him. As further regards the deer netting fines, the Plaintiff testified that there existed other deer netting in place around the neighborhood. (N.T. 75:10 – 77:16). When asked whether he was aware if any of the other residents received prior written approval from the Board before placing the deer netting, the Plaintiff answered, "I know one neighbor that didn't." (N.T. 106:12-18). Even if taken as true, the instance of one neighbor not being fined for deer netting is insufficient to constitute selective enforcement of the government documents. The Plaintiff himself admitted that he is not the only member of the Association who has been fined for violation of its rules. (N.T. 114:10-13). As such, there was no question of fact to submit to the jury regarding selective enforcement of the governing documents in this case.

For all the above reasons, the Court respectfully submits that it did not err by granting a Directed Verdict for the Defendant or by denying the Plaintiff's post-trial motion for a new trial based upon the Court's granting of the Directed Verdict.

11

Although the Court believes the remainder of the Plaintiff's allegations of error are moot based upon the failure to join an indispensable party, the Court will briefly address said allegations. The Plaintiff argues that the Court erred when it granted the Defendant's *Motion in Limine to Preclude Evidence or Argument Relating to Prior Litigation and Fines not Subject to this Case*; *Motion in Limine to Preclude Evidence or Argument Relating to Plaintiff's Claims for Sanctions and Supplemental Relief*, and *Motion in Limine to Preclude Argument that Defendant is Legally Responsible for Any Breach or Violation of the Mansion of North Park HOA's Declarations and Bylaws*.

Regarding this Court's granting of the Defendant's *Motion in Limine to Preclude Evidence or Argument Relating to Prior Litigation and Fines not Subject to this Case*, the Plaintiff in this case sought to introduce evidence and judicial statements related to three prior litigation cases between the Plaintiff and the Mansions of North Park Homeowners' Association, i.e., *Mansions of North Park Homeowners' Association v. McCullough*, 2009 Pa. D&C LEXIS 112, *aff'd. w/o opinion* 996 A.2d 566 (Pa. Super. 2010); *McCullough v. Mansions of North Park Homeowners' Association*, 2013 Pa. Super. Unpub. LEXIS 989 (Pa. Super.2013); and *Mansions of North Park v. McCullough (arbitration)*, Allegheny County AR 13-4411 (January 16, 2014). The Defendant argued in its Motion that it was not a party to those prior actions; therefore, any prior rulings, holdings, or statements made during said cases would unfairly prejudice the Defendant. The Plaintiff argued that these prior litigation actions and the holdings and statements therein constituted the "law of the case," and thus, could be utilized to subject the Defendant in this action to sanctions and attorney's fees pursuant to 42 Pa.C.S.A. 2503(b)(6), (7), and (9). (*See First Am. Compl.* ¶¶ *16-20*).

As noted by the Supreme Court of Pennsylvania, the law of the case doctrine states

12

that:

> (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court. *See* Joan Steinman

Com. v. Starr, 664 A.2d 1326, 1331 (Pa. 1995). First, the three prior litigation matters are just that – prior litigation matters; they do not constitute remand proceedings, a second appeal, or a transfer of a matter between trial judges of coordinate jurisdictions; thus, the previous rulings, statements, and/or holdings do not constitute the law of the case. Moreover, the Plaintiff did not proffer any evidence or argument that the Defendant in this case, RJ Development Company t/d/b/a RJ Community Management Co., was a party to the previous litigation matters the Plaintiff sought to introduce into evidence. As such, the introduction of any holdings, evidence, or statements related to those previous litigation matters against a separate entity, i.e., the HOA, which is not a party to this case, would have been improper. Therefore, this Court respectfully submits that it did not err when it granted the Defendant's *Motion in Limine to Preclude Evidence or Argument Relating to Prior Litigation and Fines not Subject to this Case.*

Next, with respect to the Plaintiff's argument that the Court erred when it granted the Defendant's *Motion in Limine to Preclude Evidence or Argument Relating to Plaintiff's Claims for Sanctions and Supplemental Relief,* in said Motion, the Defendant argued that, pursuant to 42 Pa.C.S.A. § 7538, a party may only request supplemental relief by application after declaratory judgment has been entered in their favor. The Defendant further argued that the conduct on which the Plaintiff based his request for sanctions was pre-litigation conduct,

13

which conduct is beyond the scope of 42 Pa.C.S.A. §2503. Thus, the Defendant sought to preclude evidence or argument relating to the sanctions sought in the Plaintiff's First Amended Action for Declaratory Judgment. The Plaintiff argued that the question of whether or not the Defendant's conduct in assessing fines against the Plaintiff in contradiction of Judge Friedman's opinion rose to the level of obdurate, bad faith, and vexatious conduction was a question of fact for the jury.

Regarding Plaintiff's request for supplemental relief, title 42 Pa.C.S.A. § 7538, Applications for relief, provides:

> **(a) General. rule.**--Judicial relief based on a declaratory judgment or decree may be granted whenever necessary or proper, subject to Chapter 55 (relating to limitation of time). If an application for supplemental relief is deemed sufficient the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by a previously entered declaratory judgment or decree to show cause why further relief should not be granted.
>
> **(b) Form of application.**--An application for relief or supplemental relief under this subchapter shall be in the form prescribed by general rules.

42 Pa.C.S.A. § 7538. Other than the setting aside of the fines assessed against the Plaintiff, the only other relief the Plaintiff sought was an award of attorney's fees and costs, and an award of punitive damages relative to the Defendant's actions in assessing fines against the Plaintiff in contempt of Judge Friedman's opinion in the case of *Mansions of North Park Homeowners' Association v. McCullough*, 2009 Pa. D&C LEXIS 112, *aff'd. w/o opinion* 996 A.2d 566 (Pa. Super. 2010).

Presently, the Plaintiff's request for supplemental relief was grounded in the Defendant's actions that allegedly violated 42 Pa.C.S.A. 2503(6), (7), and (9), Right of participants to receive counsel fees. Title 42 Pa.C.S.A. 2503(6), (7), and (9) provide that a party may be entitled to reasonable counsel fees under the following circumstances:

14

(6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter.

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

42 Pa. Stat. and Cons. Stat. Ann. § 2503 (6), (7), and (9). "An award for counsel fees under Section 2503 is meant to compensate the innocent litigant for costs caused by the actions of the opposing party." Maurice A. Nernberg & Assocs. v. Coyne, 920 A.2d 967, 972 (Pa. Commw. Ct. 2007) (citing Westmoreland County Industrial Development Authority v. Allegheny County Board of Property Assessment, 723 A.2d 1084, 1086-1087 (Pa.Cmwlth.1999)).

First, it is the province of the Court to determine whether to award sanctions and counsel fees pursuant to section 2503, and not the jury. (See Nernberg, 920 A.2d at 969, citing Westmoreland County Industrial Development, 723 A.2d at 1086, "A denial of counsel fees under Section 2503 of the Judicial Code, 42 Pa.C.S. § 2503, rests with the discretion of the trial court...."). Additionally, even if the question of whether the Defendant engaged in dilatory, obdurate, or vexatious conduct was a question of fact for the jury, the Plaintiff failed to present any evidence or argument to raise a question of fact that the Defendant engaged in conduct that would subject it to sanctions and payment of the Plaintiff's attorney's fees under 42 Pa.C.S.A. § 2503(6), (7), or (9). As noted previously by the Superior Court,

> Both § 2503(7) and § 2503(9) have been interpreted to apply to conduct of a party in commencing a proceeding or conduct during the pendency of an action. In *McGarry v. Broadmoor Custom Homes, Inc.,* 387 Pa.Super. 43,

15

563 A.2d 934 (1989), this Court held that given the plain language of the statute, § 2503(7) applied only to dilatory acts occurring after the lawsuit is instituted, and therefore vacated the award of counsel fees which was premised on the defendants pre-litigation failure to respond to a request to arbitrate. *See also White v. Redevelopment Authority,* 69 Pa.Cmwlth. 307, 451 A.2d 17 (1982).

Our review of judicial interpretation of § 2503(9) also reveals that this statutory exception to the general rule applies to bad faith conduct related to the institution of the suit or occurring after the commencement of the suit.

Cher-Rob, Inc. v. Art Monument Co., 594 A.2d 362, 364 (Pa. Super. 1991).

In the instant case, the parties did not dispute that the conduct on which the Plaintiff based his request for attorney's fees and sanctions was the assessment of fines against the Plaintiff "in contravention of the opinion of Judge Friedman," which actions occurred prior to the filing of the instant lawsuit. (*See* Pl's First Am. Action for Decl. Jud. ¶¶ 15-20.) The Plaintiff did not allege or proffer evidence of any dilatory, obdurate, or vexatious conduct of the Defendant after suit was filed. Further, as discussed above, there was no evidence or argument that this Defendant was involved in any of the prior litigation matters between the Plaintiff and the Mansions of North Park Homeowners' Association. As such, there was no evidence or argument proffered by the Plaintiff that would raise a question of fact to submit to the jury regarding the imposition of attorney's fees and sanctions under 42 Pa.C.S.A. 2503 (7). Furthermore, the record demonstrates that the Plaintiff/Appellant, Mark McCullough, initiated this suit against the Defendant, RJ Development Company t/d/b/a RJ Community Management Co. Moreover, it was the Plaintiff/Appellant, Mark McCullough, who filed the appeal from the Magisterial District Judge David T. Kovach's initial dismissal of his action against the Defendant. Thus, the Plaintiff presented no evidence or argument to suggest there existed any question of fact to submit to the jury regarding the imposition of sanctions and

16

attorney's fees under 42 Pa.C.S.A. 2503 (9). In light of the above, there was also no question of fact to submit to the jury regarding the issue of whether the Defendant violated any general rule which expressly prescribed the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter. 42 Pa.C.S.A. 2503 (6). For the foregoing reasons, the Court respectfully submits that it did not err when it granted the Defendant's *Motion in Limine to Preclude Evidence or Argument Relating to Plaintiff's Claims for Sanctions and Supplemental Relief.*

Finally, regarding the Plaintiff's allegation that this Court erred when it granted the Defendant's *Motion in Limine to Preclude Argument that Defendant is Legally Responsible for Any Breach or Violation of the Mansion of North Park HOA's Declarations and Bylaws,* in said Motion, the Defendant argued that the Declaration and Bylaws are contracts between homeowners' associations and their members, and that this Defendant was acting as an agent for a disclosed principal, i.e., the HOA's Board of Directors. As such, the Defendant argued, it was required to act at the direction of the Board of Directors, its contract was with the Board of Directors, and there has been no allegation that the Defendant acted contrary to the direction of the Board of Directors or outside the scope of their contract. The Plaintiff argued that he did not file a Breach of Contract action; rather, he filed a declaratory judgment action, and, as such, was merely requesting that the fines assessed against the Plaintiff be set aside because the Defendant selectively enforced the Mansions of North Park Declaration of Covenants, Conditions and Restrictions and the Mansions of North Park's Amended Bylaws, Conditions and Restrictions against the Plaintiff.

Presently, the Plaintiff presented no argument or proffered any evidence that the Plaintiff was not aware that the Defendant was acting as the management company for the

17

HOA. The Plaintiff presented no argument or proffered any evidence that the Defendant, and not the HOA, was the entity that determined that the Plaintiff was in violation of the governing documents, or that the Defendant acted outside the scope of its contract with the HOA, or fined him without the Board's authorization. The Plaintiff stated the following in his deposition:

Q: Are you aware that the bylaws provide a resident with the right to appeal a fine that is levied against the resident within 10 days?

A: Yes.

Q: And you were aware of that procedure at the time you received the notices of these violations or claimed violations?

A: Yes

Q: Did you file an appeal?

A: No.

Q: Why not?

A: It would have been a waste of time.

Q: Why do you feel it would have been a waste of time?

A: Because I've spoken with some board members and friends of board members and that's the impression I got.

Q: How did you develop this impression? I'm just not clear as to why you felt that going through the appellate process would have been pointless.

A: Because I had no chance of being successful.

...

Q: Do you recall what they said from what you inferred that your appeal would not be successful?

A: Yeah. They said whatever each one of these violations that we were referring to, they said they're a violation. They are not going to change their mind.

18

Q: They said it's a violation. Did you speak to them after receiving notice from R.J. Management that they were a violation?

A: I don't think I did after.

Q: So the conversations with these board members occurred prior to you receiving notice?

A: Conversations or e-mail.

...

Q: Do you dispute that the Board of Directors has discretion to determine what conduct constitutes a violation under the bylaws?

A: No, I don't dispute that.

Q: And obviously they, through R.J. Management, exercised that discretion and deemed this conduct to be violative of Sections 2 or 3 of the Use Restrictions set forth in the bylaws?

A: Yes.

(Def.'s Mot. Summ. Judg., Ex. A at 50:18 – 51:16; 52:11 – 53:2; 53:13 – 23).

Moreover, any question of the Defendant's breach of the governing documents would have required the presence of the HOA. The HOA has a direct and substantial interest in the interpretation and enforcement of the governing documents. Therefore, any argument regarding the Defendant's breach of the governing documents would have been improper. As such, the Court respectfully submits that it did not err when it granted the Defendant's *Motion in Limine to Preclude Argument that Defendant is Legally Responsible for Any Breach or Violation of the Mansion of North Park HOA's Declarations and Bylaws.*

For all the above reasons, the Plaintiff's appeal should be dismissed and the Court's Directed Verdict sustained.

RESPECTFULLY SUBMITTED,

S. MICHAEL YEAGER
JUDGE